IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF kenz.vaporizer@gmail.com AND diehardx1503@gmail.com STORED AT PREMISES CONTROLLED BY Google LLC | Case No. 22-MJ-5349  **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Theodore Jones, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information in its possession pertaining to the subscriber(s) or customer(s) associated with the account, including the content of communications.

2.     I am a Special Agent (SA) with the Federal Bureau of Investigation ("FBI") and have been so employed since May 13, 2018.  I am currently assigned to cyber squad in the Louisville Division of the FBI.  I have received training from the FBI Academy in Quantico, Virginia, and elsewhere, which covered a variety of investigative programs and techniques, including cyber training, computer intrusions and other internet related crimes.  I hold several

professional certifications in information security and strategic planning. I have personally conducted, and assisted in, a variety of criminal investigations into violations of federal law, including Title 18, United States Code, Sections 371 (conspiracy), 1030 (computer fraud) and 1956 (money laundering).

3.  This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.  Based on my training and experience, and the facts as set forth in this affidavit, which are personally known to me, there is probable cause to believe that violations of 18 U.S.C. § 1030 and 18 U.S.C. § 1956 have been committed by Fahri Fauzi, Muhammad Fauji Alfarez, and possible unknown persons with connections to the Eastern District of Kentucky. There is also probable cause to believe that the user or user(s) of email accounts kenz.vaporizer@gmail.com and diehardx1503@gmail.com have engaged in electronic communications in furtherance of the computer fraud scheme described in this affidavit. There is probable cause to believe that a search of the information described in Attachment A will find evidence, instrumentalities, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.  The investigated offenses occurred, in part, in Fayette County in the Eastern District of Kentucky. This Court, therefore, has jurisdiction to issue the requested search and seizure warrant on Google because it is "a court of competent jurisdiction," specifically, "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

6. Approximately $1.35 million worth of cryptocurrencies was stolen from victim M.R.'s personal Coinbase.com account on January 23, 2022. M.R. was a resident of Lexington, KY at the time of the incident, which is located in the Eastern District of Kentucky. M.R. created an online account with Coinbase.com on June 21, 2020, to purchase and manage cryptocurrencies. M.R. accessed her Coinbase.com account infrequently, and when she did, it was exclusively through an application on her cellular phone. M.R. did not access her Coinbase.com account between December 2021 and March 2022 but logs provided to the FBI by Coinbase.com show several instances of account activity that were not authorized by M.R. during that timeframe. On December 5, 2021, there were several failed login attempts from Internet Protocol ("IP") address 223.223.137.121, which resolved to an Indian telecommunications provider, and IP address 66.181.161.26, which resolved to a Mongolian telecommunications provider.

7. On January 23, 2022, unknown suspects accessed M.R.'s account from IP addresses 73.124.201.182 and 98.253.9.210, which resolved to Comcast. Legal process revealed these addresses were registered to private users located in Sunrise, Florida and Fishers, Indiana.[1] During these sessions on January 23, 2022, the actors initiated five transactions with a total value of approximately $1,353,023.92. Of that amount, approximately $1.25 million went to one bitcoin address (18noaBdZxpFNWLcUgAT4shCVyKUizjeTJk). Binance.com voluntarily provided the FBI with records pertaining to that address. The owner was determined to be Fahri

---

[1] This is consistent with a tactic used by cybercriminal actors where they will compromise a victim's home or business network and use that network as a 'proxy' to connect to the internet.

Fauzi, who registered with email address kenz.vaporizer@gmail.com. After receiving the funds on January 23, Fauzi made 17 separate transfers to seven additional bitcoin addresses. Three transactions totaling $416,007 were transferred to bitcoin address TEdymETp3tKBhrpMNzQzC2etWnr9xJDPWY, which belongs to Binance.com account number 307916908. Binance.com voluntarily provided the FBI with information pertaining to account number 307916908. It is registered to Muhammad Fauji Alfariz, with email address diehardx1503@gmail.com.

8. Preservations requests were submitted to Google for both target accounts on May 2, 2022, and extension requests were submitted on September 8, 2022.

9. In my training and experience, I have learned that cyber-criminal enterprises tend to operate under a model where job functions are split amongst numerous individuals. The actors responsible for collecting victims' account credentials are not always the same people who unlawfully access those same accounts. Likewise, the subjects responsible for laundering criminal proceeds are also, oftentimes, separate individuals. Because multiple people can be involved in a single criminal incident, and actions are often taken in close succession, it is reasonable to believe the actors are working in close coordination with one another and have communicated extensively. It is also reasonable to believe the content of the emails within the target accounts, as well as data associated with the accounts themselves, will provide information that can be used to identify co-conspirators as well as other services and means of communication used by the actors.

## BACKGROUND CONCERNING EMAIL

10. Google is the provider of the internet-based accounts listed in paragraphs 4 and 7. Google provides its subscribers internet-based accounts that allow them to send, receive, and

store emails online. Based on my training and experience, I know that Google LLC allows subscribers to obtain email accounts at the domain name Gmail.com. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate email address for backup purposes, a phone number, and, in some cases, a means of payment. Even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

   11. Google provides email services that typically include folders such as "inbox" and "sent mail" folders, as well as electronic address books or contact lists. All of the folders are linked to the subscriber's username. A subscriber's Google account can be used not only for email, but also for other types of electronic communications, including instant messaging, photo and video sharing, video chats, SMS text messaging, and social networking. Further, a Google subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Google's servers. In general, user generated content derived from many of these services is stored on Google's servers until deleted by the subscriber. If the subscriber does not delete the message, the message can remain on Google servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time. Based on my training and experience, I know that the types of data discussed above can include records and communication that constitute evidence of criminal activity.

   12. In addition to the information described in previous paragraphs, providers, like Google, typically retain certain transactional information about the creation, and use, of each account on their systems. This information can include the date on which the account was

created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Also, providers, such as Google, typically collect and maintain location data related to subscriber's use of Google's services, including data derived from IP addresses and/or Global Positioning System ("GPS") data. Because every device that connects to the Internet must use an IP address, IP address information and GPS date can help to identify which computers or other devices were used to access the Google account(s).

        13.     In some cases, account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. This information can help to identify the user(s,) or who had control, of the account.

        14.     In summary, based on my training and experience in this context, I believe that the servers of Google are likely to contain user-generated content such as stored electronic communications, as well as Google-generated information about its subscribers and their use of Google services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

15.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. The information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the IP addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

**CONCLUSION**

16.  Based on the facts set forward in this affidavit, I believe there is probable cause to search information associated with the Google LLC accounts as described in Attachment A, for evidence and instrumentalities of crimes as described in Attachment B.

17.  I request that the Court issue the proposed search warrant. Under 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google LLC. Because the warrant will be served on Google LLC, who will then compile the requested records at a time convenient to it within 14 days of the execution of the search warrant, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**REQUEST FOR SEALING**

18.  I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

19.  Further, the undersigned requests that the Court order Google LLC not to notify any person (including the subscribers and customers of the accounts listed in the search warrant) of the existence of the attached search warrant for a period of one-hundred eighty (180) days. This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or

court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." An order would be appropriate because the attached warrant relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. If alerted to the existence of the search warrant, the subjects under investigation could destroy that evidence, including information saved to their personal computers. Therefore, an order directing Google LLC not to disclose the existence or content of the search warrant for one-hundred eighty (180) days is requested.

Respectfully submitted,

/s/ Theodore Jones
Theodore Jones
Special Agent
Federal Bureau of Investigation

Transmitted via email and attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 on this  29  day of September, 2022.

_____
Honorable Matthew Stinnett
UNITED STATES MAGISTRATE JUDGE